UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff | ) | No. 05 CR 670-1 | |
| | ) | | |
| vs. | ) | Judge Ronald A. Guzman | |
| | ) | | |
| DAVIS OMOLE, | ) | | |
| | ) | | |
| Defendant | ) | | |

**SENTENCING MEMORANDUM**

The defendant, DAVIS OMOLE, by and through his attorney, GERALD J. COLLINS, submits the following memorandum to the Court in order to provide information to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment as required by 18 U. S. C. Sec. 3553(a) in light of *United States v. Booker*, 125 S. Ct. 738 (2005).

*History*

On July 27, 2005, a complaint was filed in the district court charging the defendant, DAVIS OMOLE, with participating in a scheme to defraud in violation of 18 U. S. C. Sec. 1343. On July 27, 2005, the defendant along with co-defendant, ADENIYI ADESOKAN, was arrested on this complaint. Subsequently, each defendant was released on a $4,500 unsecured bond. The defendants were placed on home confinement with electronic monitoring through PreTrial Services.

On August 25, 2005, a ten-count indictment was filed against the defendants. Count One charged them with a scheme to defraud in violation beginning no later than April 2003 and

continuing to at least July 2005.

On October 28, 2005, the government filed a motion to revoke Defendant David Omole's bond. On November 1, 2005, this Court modified the conditions of Defendant Davis Omole's release, and he was ordered to report to to PreTrial Service office on a daily basis, via telephone and to provide a daily listing of his activities. On November 16, 2005, this Court denied the government's motion to revoke his bond.

On December 19, 2005, Defendant Davis Omole appeared before this Court and entered a blind plea to Counts Three and Nine of the indictment. Court Three charged the defendant with wire fraud and Count Nine charged the defendant with Aggravated Identity Theft.

On March 13, 2006, this Court sentenced the defendant to concurrent terms of 12 months imprisonment, on Count Three and 24 months imprisonment on Count Nine, followed by a concurrent term of 1 year supervised release, on Count Three, and 3 years supervised release, on Count Nine. Additionally, this Court ordered the defendant to pay restitution in the amount of $90, 065.90. For a conviction for the offense of Aggravated Identity Theft, there is a mandatory, consecutive 24 month sentence. Therefore, the defendant was sentenced to a total period of incarceration for 36 months.

The government appealed this sentence. On April 15, 2008, the United States Court of Appeals for the Seventh Circuit vacated the defendant's 12-month sentence on Count Three and ordered that he be re-sentenced. On December 4, 2008, this Court sentenced the defendant to 63 months incarceration on Count One. Then, the defendant appealed. On July 7, 2010, the Seventh Circuit vacated this Court's sentence and remanded the case for re-sentencing on Count One.

*Offense Level Computations*

While the UPDATED PRESENTENCE INVESTIGATION REPORT ( which was ordered for the December 4, 2009 sentencing hearing) indicated that the offense level computations have not changed from the original presentence investigation report, present counsel believes that the original offense calculations should be challenged. Whether he acted through trial strategy or unfamiliarity with federal sentencing guidelines, original counsel failed to challenge the original sentencing guidelines of the first PreSentence Investigation Report ("PSR"). ( A check of PACER revealed that neither objections to the PSI nor a sentencing memorandum was filed on behalf of the defendant.) Present counsel believes that the original PSR seriously over-calculated defendant's offense level. According to the original PSR, "Based on a total offense level of 25 and a criminal history category of II, the guideline range for imprisonment is 63 to 78 months." (Page 28).

Today, the defendant recognizes that the base offense level for the wire fraud alleged in Count Three is 7 and does not deny that Specific Offense Characteristics increase the base offense level from 7 to 23. Those Specific Offense Characteristics include "loss amount" and "sophisticated means". However, the defendant believes that he was unjustly denied a two-level downward adjustment for acceptance of responsibility plus a 1-level downward adjustment for timely notification of his intention to plead guilty. Additionally, the defendant believes that he should not have been given a two-level upward adjustment for obstruction of justice.

According to the original PSR, "Adjustment for Obstruction of Justice: Pursuant to Sec. 3C1.1, if (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of

3

the instant offense of conviction, and (B) the obstructive conduct related to (i) defendant's offenses of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by two levels. Pursuant to Sec. 3C1.1, Application Note 4(b), committing, suborning, or attempting to suborn perjury is an example of the type of conduct to which this adjustment applies."

Next, the PSR states: "It is the government's position that Defendant Davis Omole obstructed justice by presenting false sworn testimony to the Court at his bond revocation hearing." (Page 13)

At the defendant's sentencing, this upward adjustment was never argued to this Court. The PSR based its upward adjustment on Application Note (b)..."committing or suborning, or attempting to suborn perjury...." But, there was never a finding by this Court that the defendant committed perjury at his bond revocation hearing. While at that hearing this Court did state that the Court did not believe the defendant, the Court did not make any additional findings then or at the sentencing hearing. In the Application Notes, No. 2 provides: "<u>Limitation on Applicability of Adjustment</u>....In applying this provision to false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." At a later date, this Court did modify the conditions of the defendant's bail, but this Court did not revoke the bail. Since this Court did not revoke the defendant's bail following this hearing, it can reasonably be inferred that this Court did not conclude that the defendant had committed perjury. Therefore, this upward two-level adjustment should not have been applied.

Without the upward two-level adjustment for obstruction, the defendant's guideline calculations significantly change. The original PSR placed the defendant at adjusted offense level 25. Without the obstruction adjustment, the defendant is adjusted offense level 23, but he is now entitled to the two-level downward adjustment for acceptance of responsibility which would place him at 21. Also, with acceptance of responsibility, the defendant could implore the government to make the motion for a one-level downward adjustment for his timely notification of his intention to plea guilty. There is no indication that the government had started trial preparations and the co-defendant did not plead guilty until a later date. In fact, the defendant pleaded guilty within four months of his indictment. These facts seem to more than justify the government's motion. With these additional adjustments, the defendant is now at adjusted offense level 20. At adjusted offense level 20, with a Criminal History Category of II, the defendant is facing a sentencing range of 37-46 months.

Even if this Court were to insist that the two-level upward adjustment for obstruction of justice should apply, the defendant contends that he would still be eligible for a the two-level downward adjustment for acceptance of responsibility. Under Sec. 3E1.1 Acceptance of Responsibility, Application Notes 4 provides: "Conduct resulting in an enchancement under Sec. 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both Secs. 3C1.1 and 3E1.1 may apply."

While the defendant does not concede that the obstruction adjustment should apply, this situation is an extraordinary case. The defendant's allegedly perjured testimony occurred on October 28, 2008. Less than two months later, on December 19, 2005, the defendant appears

before this Court, withdraws his plea of not guilty and enters a plea of guilty to Counts Three and Nine. While not being present, counsel assumes that the defendant admitted his guilt and acknowledged the facts of the case including all relevant conduct. These actions would normally qualify a defendant for acceptance of responsibility. Additionally, as reported in the original PSR, "The defendant stated, during the presentence investigation interview, that he's 'sorry,' and, since his involvement in the instant offense, he has been trying to "do things the right way,' such as returning to school and being a 'loyal citizen.'" There is no question that the defendant has accepted responsibility and should receive the two-level downward adjustment.

With obstruction and with acceptance adjustments, one up and one down, the defendant is at adjusted offense level, 23; however, with acceptance he should receive the one-level downward adjustment for timely notification of his intention to plead guilty placing him at adjusted offense level 22 which has a sentencing range of 46-57 months for Criminal History Category II. At adjusted offense level of either 37-46 months or 46-57, this Court must still consider the 18 U.S.C. 3553(a) factors.

*18 U. S.C. 3553(a)*

This Court should impose a sentence that is sufficient, but not greater than necessary, to comply with the sentencing goals established by Congress in 18 U. S. C. Sec. 3555(a)(2). In *Booker, Id.*, the Supreme Court has clearly held that judges must impose a sentence consistent with all of the sentencing goals set forth in 18 U. S. C. Sec. 3553(a). Sentencing judges are required "to impose sentences that reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and effectively provide the defendant with needed educational or vocational training and medical care." *Id.*, at

765. In doing so, a sentencing judge is to take into account all of the factors set forth in 18 U. S. C. 3555(a). Those factors include the following:

– the nature and circumstances of the offense;

– the history and characteristics of the defendant;

– the fundamental goals of sentencing;

– the kinds of sentences available;

– the sentencing guideline range;

– pertinent Sentencing Commission policy statements;

– the need to avoid unwarranted sentencing disparities;

– the need to provide restitution.

Davis Omole recognizes the seriousness of the nature and circumstances of his offense.

The original PSR included many pertinent factors regarding the history and characteristics of the defendant. Mr.Omole was one of five children. His parents were from Nigerian and immigrated to the United States in 1983. At the age of 47, his father was murdered in Nigeria in 1999. His mother had difficulty raising the five children alone. His mother is a nurse. Mr. Omole lived at home when he went to school and while he was released on bail in this case. According to his mother, Mr. Omole was very helpful around the house and since his father's death had taken some of his responsibilities. The mother explained to the probation officer that he learns from his mistakes when she disciplines him and is very remorseful about participating in the current offense. (PSR lines 636-673) In addition, the original PSR gave this Court insightful information regarding the defendant's success in school and work record.

This Court explained its original 36 month sentence (12 months on Count One and 24

mandatory months on Count Nine) as follows:

> "The sentence is below the guideline range as to count three. The reasons given are the defendant's age, a mere 20 years old, and the likelihood of rehabilitation. The defendant was a student at Prairie State College, and also South Suburban College. He maintained good grades in high school graduating with a 3.25 grade point average and was on both the football and chess teams. In 1999 the defendant's father was murdered and this appears to have had a substantial impact on his subsequent conduct. This is a young man with real potential for rehabilitation - beyond what the court ordinarily sees. Seven or eight years in jail would go a long way towards destroying the potential. At the same time three years in jail is absolutely necessary as punishment and as a deterrent."

The updated PSR provided this Court with more insightful information about the defendant. While this Court was not aware of the defendant's drug problem at the time of the original sentencing, defendant's problem is now clear, and it has been resolved. In his updated, PSR interview, "The defendant stated that he feels that, during that time period, he was addicted to marijuana and powder cocaine, and as a result, after he was sentenced to the BOP, he sought, was provided with, and completed drug treatment."

As this Court predicted, this defendant would be a good candidate for rehabilitation. Again, as set forth in the updated PSR, "The defendant reported that, in May 2008 and while awaiting his release from the BOP, he enrolled in and completed summer college courses at Kennedy-King College, in Chicago, Illinois (verified)." The defendant is a full-time student and employed part-time. In fact, the defendant left better paying employment so that he could attend school full-time.

Now this defendant is once again before this Court. During his last incarceration, the defendant has attended and successfully completed the long-term (12 month) residential drug abuse program. He has taken business classes in economics and stock options. Upon his release, he intends to obtain his college degree in engineering and hopes to find employment in the "energy industry", including exploration and drilling for oil world-wide. The defendant has strong support from family and friends as evidenced by the letters this Court has received. Two additional letters are attached in support of the defendant.

This defendant has more than met this Court's high expectations for him. Therefore, the defendant respectfully asks this Court to sentence him to 36 months in the Bureau of Prisons on Count Three. A sentence of 36 months is more than supported by the 3553(a) factors. Also, without the Obstruction enhancement, a sentence of 36 months is appropriate and takes into account the sentencing guidelines. At the present time, the defendant's release date is September 2, 2012. With a sentence of 36 on Count 3, the defendant should be released by the Bureau of Prisons within a short time, perhaps, even a few days.

        Respectfully submitted,

        s/ Gerald J. Collins
        GERALD J. COLLINS

GERALD J. COLLINS
Attorney at Law
100 West Monroe Street, Suite 1310
Chicago, IL 60603
(312) 641-1959